United States District Court
Southern District of Texas
**ENTERED**
November 04, 2026
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JERREL "KIOTTI" BROWN P/K/A "RADIO BOSS", | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:26-CV-03860 |
| | § | |
| ON THE RADAR PRODUCTIONS, LLC, | § | |
| | § | |
| Defendants. | | |

**ORDER**

Pending before the Court is Defendant, On the Radar Productions, LLC's ("Defendant" or "OTR") Motion to Dismiss under 12(b)(2) and 12(b)(3). (Doc. No. 9). Plaintiff, Jerrel "Kiotti" Brown p/k/a "Radio Boss" ("Plaintiff" or "Brown") responded in opposition. (Doc. No. 10). Defendant replied, (Doc. No. 13), and Plaintiff sur-replied. (Doc. No. 14). After reviewing the briefs and applicable law, the Court hereby **DENIES** Defendant's Motion. (Doc. No. 9).

## I. Background

This case arises out of the alleged use of Plaintiff's trademark, "On tha Radar" by OTR. Brown is a media personality who has used the mark "ON THE RADAR" and "ON THA RADAR" in his radio entertainment services, podcasts, video programming, live entertainment, and other events since 2016. (Doc. No. 1, ¶ 1). Brown uses these phrases across multiple platforms and entertainment mediums such as radio broadcasting, internet-based radio broadcasting, podcast platforms, YouTube, Instagram, and live entertainment. (*Id.* ¶ 8). Brown's services are distributed nationally, but he maintains a strong presence in the Houston, Texas market. (*Id.* ¶ 9). He alleges

that he has invested significant time and money in developing and promoting the phrases as a mark in connection with his brand in the entertainment industry. (*Id.* ¶ 10).

On June 21, 2021, Brown filed U.S. Trademark Application Serial No. 90749998 with the United States Patent and Trademark Office ("USPTO"), registering "ON THA RADAR" for various services in International Class 41. (*Id.* ¶ 11). On October 31, 2023, the USPTO issued U.S. Registration No. 7,208,223 for "ON THA RADAR" to Brown for the services included in the 2021 application. (*Id.* ¶ 12).

OTR, on the other hand, is a New York limited liability company engaged in the creation and distribution of entertainment content on the internet. (*Id.* ¶ 2). OTR distributes its content through YouTube, Spotify, Audiomack, Instagram, Facebook, TikTok, its own website, and Power 105.1 (WWPR-FM). (Id. ¶ 17-18). OTR alleges that it first began using the mark "ON THE RADAR" in connection with its services in 2018. (Doc. No. 9, p. 1). In December 2023, OTR representatives traveled to Houston, Texas as part of a multi-city tour to record 75 artists and create long and short-form video content. (Doc. No. 10, ¶ 11). Although OTR used a local shop, The Closet, as a venue for the recordings, it also brought its own neon sign that read, "ON THE RADAR." (Doc. No. 10, Ex. 6). To elicit artists to feature on this multi-city tour, OTR circulated the email address, ontheradartour@gmail.com. (*Id.* Ex. 7). When OTR published this content on its website, it did so as a 75-part series labeled "On the Radar HOUSTON TEXAS EDITION." (*Id.* Ex. 2).

On August 1, 2025, OTR filed a Petition for Cancellation of Brown's Registration No. 7,208,223 with the Trademark Trial and Appeal Board ("TTAB"). (Doc. No. 1, ¶ 31). Brown filed his answer to OTR's petition on September 11, 2025. (*Id.* ¶ 32). Brown then filed the present action on May 14, 2026. (Doc. No. 1). Brown claims that OTR's use of the infringing mark has caused

irreparable harm to the business he had developed surrounding the mark by causing consumer confusion, diverting listeners and customers, loss of revenue, and damage to the goodwill and reputation Brown had built. (*Id.* ¶ 35).

## II. Legal Standard

### A. 12(b)(2) Personal Jurisdiction

When a district court rules on a Rule 12(b)(2) motion without a hearing, the plaintiff must make a prima facie showing of jurisdiction. *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). The court may consider the contents of the record, including affidavits or other recognized methods of discovery, in deciding whether to exercise personal jurisdiction. *Stuart v. Spademan*, 772 F.2d 1185, 1192 (5th Cir. 1985). Generally, the court accepts the plaintiff's non-conclusory, uncontroverted allegations as true and resolves conflicts between the facts contained in the parties' affidavits in the plaintiff's favor. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

A federal court may exercise personal jurisdiction over a non-resident defendant if: (1) the long-arm statute of the forum state allows the exercise of personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction over that defendant is consistent with Fourteenth Amendment to the United States Constitution. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 398 (5th Cir. 2009). The two-part jurisdictional inquiry collapses into a single step in this forum because the Texas long-arm statute extends to the limits of federal due process. Tex. Civ. Prac. & Rem. Code § 17.042; *Johnston*, 523 F.3d at 609; *Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex. 1990). To meet the requirements of due process, the plaintiff must demonstrate: (1) that the non-resident purposely availed himself of the benefits of the forum state by establishing minimum

contacts with the state; and (2) that the exercise of jurisdiction does not offend traditional notions of fair play and substantial justice. *Mullins*, 564 F.3d at 398.

"Minimum contacts" can give rise to either specific personal jurisdiction or general personal jurisdiction. *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001). General personal jurisdiction exists when a non-resident defendant's contacts with the forum state are "substantial, continuous, and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–19, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984); *Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 374 (5th Cir.2003). "Random, fortuitous, or attenuated contacts are not sufficient to establish jurisdiction." *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 312 (5th Cir.2007) (citation omitted). Generally, "an individual is subject to general jurisdiction in [his] place of domicile." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021).

The court "may exercise 'specific' jurisdiction in a suit arising out of or related to the defendant's contacts with the forum." *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006). The Fifth Circuit has articulated a three-step analysis for specific jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). The touchstone of the minimum contacts inquiry is whether the defendant's conduct shows that it "reasonably anticipates being haled into court" in the forum state. *Id.*

**B. 12(b)(3) Improper Venue**

Even if a given forum may exercise personal jurisdiction over the defendant, Rule 12(b)(3) permits a defendant to assert "improper venue" as a defense to a plaintiff's claim for relief. Fed. R. Civ. P. 12(b)(3). The general venue statute, 28 U.S.C. § 1391 controls a plaintiff's choice of venue. Under that section, a diversity action may be brought in "(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or] (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391 (b)(1)–(2).

"Once a defendant challenges venue, the plaintiff has the burden of demonstrating that the chosen venue is proper." *Graham v. Dyncorp Int'l, Inc.*, 973 F. Supp. 2d 698, 700 (S.D. Tex. 2013) (citing *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 396 (S.D. Tex. 2011)). "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (citations omitted). If venue is lacking, district courts are instructed to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. "The decision to dismiss or transfer lies within the court's discretion." *Graham*, 973 F. Supp. 2d at 701 (citing *AllChem Performance Prods., Inc. v. Aqualine Warehouse, LLC*, 878 F. Supp. 2d 779, 788 (S.D. Tex. 2012)).

## III. Analysis

### A. Personal Jurisdiction

OTR asserts that the Court does not have general personal jurisdiction over OTR as whatever contacts it may have with Texas do not render it "at home" in the state. (Doc. No. 9 at Brown does not contest this argument in his response, and the Court agrees—OTR is not subject to general personal jurisdiction in Texas, so the Court turns to specific jurisdiction.

*i. OTR has minimum contacts in Texas*

The Court will therefore consider whether OTR has minimum contacts with the forum state out of which the present action arose or to which the present action is related such that the exercise of specific jurisdiction is fair and reasonable. First, the Court considers whether the defendant has minimum contacts with Texas—that is, whether it purposely directed its activity toward Texas or purposefully availed itself of the privilege of conducting activities in Texas. *See McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Defendant argues that it does not because it has never maintained offices, owned any property, registered to do business, or had any employees based in Texas. (Doc. No. 9, p. 5-6). OTR "provides its online content via the Internet and various websites generally throughout the world." (*Id.*, Ex. 1, ¶ 10). The Fifth Circuit has held that even an interactive website made accessible in the forum state will fail to establish minimum contacts sufficient for personal jurisdiction where the website does not specifically target the forum state. *See Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 320 (5th Cir. 2021) (finding that alleged libel against a plaintiff in Texas did not create personal jurisdiction in Texas when the article never mentions Texas nor is it directed to the state).

OTR's accessibility world-wide, however, is not its only contact with the forum state. OTR physically and purposefully entered Houston, Texas to produce a content series entitled "On the

Radar (HOUSTON TEXAS EDITION)" with various artists.[1] (Doc. No. 10, Ex. 2, Ex. 3, ¶¶ 4-5). To produce this content, OTR spent four days recording content with 75 artists at a Houston establishment known as The Closet. (Doc. No. 13, Ex. 1, ¶ 8). To do so, OTR engaged The Closet and recording artists in and around the Houston area to create this content for its "Houston stop" on OTR's multi-city tour. (*Id.* ¶ 7). This content was published on OTR's website and is labeled as having been recorded in Houston, Texas.[2] (Doc. No. 10, Ex. 2). Thus, OTR did something that The Huffington Post did not—it came to Houston and engaged artists and at least one business in Texas to create content that was then posted on its website under a name that both references the forum state by name and uses the allegedly infringed mark.[3] *See Johnson*, 21 F.4th at 320. Further, OTR held an open invitation to Houston artists via email under the address "ontheradartour@gmail.com" and used a neon sign in its Houston recording sessions that stated, "On the Radar." (Doc. No. 10, Exs. 6-7). While Plaintiff is, admittedly, suing OTR for its use of the mark on its website which is generally accessible in Texas as it is outside of Texas, he is also claiming relief for the use of the mark directly within the Houston market as part of a multi-city tour.

OTR nonetheless contends that this cannot establish the minimum contacts required for specific personal jurisdiction as it did not have a contract with any of the artists or with The Closet, it did not sell or offer for sale any merchandise while in Houston, it did not advertise its content or engage with influencers or sponsors in the Houston area, and its Texas viewership makes up a small percentage of its overall viewership. (Doc. No. 10, Ex. 1, ¶¶ 10, 12-16). OTR stated that the

---

[1] Brown asserts based on his personal knowledge of the music industry in Houston, Texas that at least 35 of the 75 featured artists were Houston-based. (Doc. No. 10, Ex. 4, ¶ 5).

[2] Specifically, OTP produced 75 long-form YouTube videos and 76 YouTube Shorts from this recording. (Doc. No. 13, Ex. 1, ¶ 9).

[3] "The cities on the tour were Atlanta, Detroit, Milwaukee, Chicago, Los Angeles, Philadelphia, Washington, D.C., Miami, Houston, and New Orleans." (Doc. No. 13, Ex. 1, ¶ 7).

Houston-taped videos received 63,546 views from Texas as compared to its 586,470,239 total channel views. (*Id.* ¶ 10). Such contacts, OTR argues, are "random, fortuitous, and attenuated" such that it was not foreseeable for OTR to be haled into court in Texas. *See Burger King v. Rudzewicz*, 471 U.S. 462, 486 (1985). The Fifth Circuit has held, however, that "[a] single act by a defendant can be enough to confer personal jurisdiction if that act gives rise to the claim being asserted." *Lewis v. Fresne*, 252 F.3d 352, 358 (5th Cir. 2001).

Defendant also asserts that whatever contacts it may have in Texas because of this tour-stop cannot create personal jurisdiction for this claim because none of OTR's actions while in Texas constitute an element of Plaintiff's claim of trademark infringement. This argument essentially breaks down OTR's actions into two categories: the creation of content using the mark and publishing/promulgating the content under the mark. OTR argues that only its publishing/promulgating of the content under the mark could constitute infringement of Plaintiff's trademark and OTR did that in New York, not in Texas—in other words, they argue that all relevant (infringing) conduct occurred in New York. *See Walden v. Fiore*, 571 U.S. 277, 291 (2014) ("Petitioner's relevant conduct occurred entirely in Georgia, and the mere fact that his conduct affected plaintiffs with connections to the forum [s]tate does not suffice to authorize jurisdiction."). To decide whether creation of the content and solicitation of artists to create such content is violative of Plaintiff's trademark would constitute a consideration of the merits of Plaintiff's claim. The Court need not engage in such an analysis for the purposes of this motion. It is sufficient to acknowledge that Plaintiff is alleging harm as a result of OTR's use of the mark in its activities and that these activities occurred in Houston and directly targeted at the city of Houston, regardless of whether it was later published to a globally-accessible internet market.

Plaintiff also analogizes the Supreme Court's reasoning in *Calder* where the Court found minimum contacts to establish personal jurisdiction for a defamatory article written in Florida but that affected a plaintiff in California. *Calder v. Jones*, 465 U.S. 783, 789 (1984). While the Florida journalist did not engage directly with the State of California and the article was not published directly to California, it was clearly reasonable for him to anticipate being haled into court to answer for the truth of his statements when directed to a California resident. *Id.* at 789-90. Here, Plaintiff argues that the intentional use of the mark goes further than the Florida journalist in *Calder* because here OTR came to Houston, used the mark in the forum state, Plaintiff was affected in the forum state, and OTR took actions outside of Texas that directed its content to Texas by labeling its videos "On the Radar HOUSTON TEXAS EDITION."

The Court acknowledges that Plaintiff may be claiming harm beyond that which OTR allegedly immediately inflicted by its use of the mark in its Houston tour-stop. The proper question at this stage, however, is whether it was reasonably foreseeable to OTR that its use of the mark, as it did in Houston, would subject it to jurisdiction in the states along its multi-city tour. This Court finds that there are sufficient contacts with the state of Texas. That being the case, such minimum contacts may be sufficient if Brown's claim arises out of or relates to these contacts.

*ii. Plaintiff's claim arises out of or relates to those minimum contacts*

Plaintiff asserts that the claim arises out of and relates to OTR's production and distribution of entertainment content under the mark in Texas. Plaintiff's complaint states that he started to use the mark in 2016, and OTR claims that it started to use the name in its operations in 2018. (Doc. No. 1, ¶ 1; Doc. No. 9, p. 1). OTR representatives traveled to Houston to record the "On the Radar (HOUSTON TEXAS EDITION)" series in 2023. (Doc. No. 10, ¶ 11). Moreover, OTR used signage that contained the mark. (*Id.*, Ex. 6). OTR contends the two parties were coexisting

peaceably until 2025, both using the mark without incident or confusion. (Doc. No. 9, p. 1). That being said, in 2025, OTR brought a Trademark Trial and Appeal Board cancellation proceeding to void Brown's registration for the mark, and Plaintiff thereafter filed the present case. (*Id.* at p. 1-2). Plaintiff's claim is for infringement of the trademark "On tha Radar" by OTR—effectively the same title given to OTR's Houston Edition series recorded and produced in Texas. Thus, Plaintiff's claim for trademark infringement at the very least relates to OTR's use of the mark as it did in Texas.

Plaintiff also claims likelihood of confusion with their simultaneous use of the mark in Houston and alleges that he has lost revenue and business as OTR's use has caused him to lose viewers and listeners. (Doc. No. 1, ¶ 35). As the two appear to have co-existed for several years without incident and only recently—after OTR's tour through Houston—initiated the cancellation proceedings and infringement suit, the Court can infer that Brown became aware of OTR's use by and through this tour and suffered harm in the Houston market as a result of this tour. That being the case, the present cause of action brought by Plaintiff arises out of (at least in part) and relates to OTR's use of the mark in Texas as in other places.

*iii. Exercise of jurisdiction is fair and reasonable according to the traditional notions of fair play and substantial justice*

The touchstone of specific personal jurisdiction analysis is whether the defendant could reasonably anticipate that it would be haled into court in connection with its contacts in that state. *McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009). Once Plaintiff establishes that minimum contacts exist, the defendant must make a "compelling case" that exercising jurisdiction would be unreasonable. *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999) (citing *Burger King v. Rudzewicz*, 471 U.S. 462, 477 (1985)). However, the Fifth Circuit has stated that "it is rare to say the assertion is unfair after minimum contacts have been shown." *Wien Air Alaska, Inc.*, 195

F.3d at 215. Defendant may do so by considering five factors: "(1) the burden on the nonresident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; (4) the interstate judicial system's interest in the most efficient resolution of the controversies; and (5) the shared interests of the several states in furthering fundamental social policies." *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 276 (5th Cir. 2006) (citing *Nuovo Pignone, SpA v. Fagioli SpA*, 310 F.3d 374, 382 (5th Cir. 2002)).

While it may be a burden on OTR to litigate this claim in Texas rather than in its home state of New York, that burden does not outweigh the other factors, all of which favor allowing Plaintiff's claim to proceed in Texas. For the purposes of its multi-city tour, OTR purposely availed itself of the City of Houston, its artists, and at least one business to record and produce content. Thus, they are able and willing to travel as is evidenced by their time in Houston as well as their time otherwise spent on the multi-city tour.

Texas has an interest in protecting the trademark rights of its citizens in this case as in any other in which a citizen has suffered harm within a state by an out-of-state actor. Further, Plaintiff has an interest in litigating his claim here where the alleged effect on his business took place and where all witnesses and events relevant to his cause of action are located. While OTR has argued that the exact opposite is true for it given that all of its relevant witnesses and discovery is located in New York, the burden on OTR does not outweigh the Plaintiff's interest in his choice of forum here. Finally, Defendant does not identify a prevailing interest held by New York to prevent OTR from answering to whatever liability might arise from its multi-city tour to other cities and states.

Therefore, OTR is subject to the specific jurisdiction of this Court.

**B. Venue**

Having established that OTR is subject to specific personal jurisdiction in Texas, the Court now turns to the question of venue. Plaintiff pleads venue alternatively under 28 U.S.C. § 1391(b)(2) and 1391(c). Section 1391(b)(2) permits venue in a district where "a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). For the foregoing reasons, venue is appropriate as OTR's Houston-leg of the multi-city tour at least in part gave rise to the claim at issue.

**CONCLUSION**

Based on the foregoing analysis, the Court **DENIES** Defendant's Motion to Dismiss under 12(b)(2) and 12(b)(3). (Doc. No. 9).

Signed on this 4th day of November 2026.

Andrew S. Hanen
United States District Judge